IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ZAGG INTELLECTUAL PROPERTY HOLDING COMPANY, INC., <br><br> Plaintiff, <br><br> vs. <br><br> XO SKINS, LLC; RUSSELL B. TAYLOR d/b/a FUSION OF IDEAS; GHOST ARMOR LLC; and UNITED SGP CORPORATION, <br><br> Defendants. | ORDER <br><br> AND <br><br> MEMORANDUM DECISION <br><br> Case No. 2:10-CV-1257-TC |

In this patent infringement suit, Plaintiff ZAGG Intellectual Property Holding Company, Inc. (ZAGG) seeks dismissal of the Defendants' inequitable conduct counterclaims[1] under Rule 9(b), Rule 12(b)(6), and Federal Circuit precedent set forth in Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312 (Fed. Cir. 2009), and Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276 (Fed. Cir. 2011). Because the Defendants have not adequately pled (1) materiality of the 3M Technical Bulletin, or (2) intent to deceive by withholding from the U.S. Patent & Trademark Office a reference to the BodyGuardz product line, ZAGG's motions to dismiss the inequitable conduct counterclaims are GRANTED, but WITHOUT PREJUDICE. Defendants

---

[1] See Defendants XO Skins LLC, Fusion of Ideas, and Ghost Armor LLC's Counterclaims (ECF No. 87); Defendant United SGP Corporation's Counterclaim (ECF No. 85). For purposes of analysis, the court combines the allegations in the two sets of counterclaims and treats them as one set.

will have an opportunity to amend in accordance with the directions set forth below.

## FACTUAL BACKGROUND

ZAGG contends that the Defendants have infringed the claims of its United States Patent No. 7,784,610 (the '610 Patent). The '610 Patent claims an invention of a kit used to apply protective sheets of clear plastic film to the surfaces of electronic devices, such as cell phones, through use of an adhesive spray and a squeegee. The '610 Patent issued on August 31, 2010, with Andrew Mason listed as the inventor. Mr. Mason assigned the '610 Patent to ZAGG as part of a settlement of an earlier patent suit that was pending before this court (ZAGG v. Mason, Case No. 2:10-CV-882-TC (D. Utah)).[2] The '610 Patent is a continuation-in-part of United States Patent No. 7,389,869 (the '869 Patent).[3]

The Defendants contend that the '610 Patent is invalid based on inequitable conduct, specifically, that the inventor Andrew Mason and Mr. Mason's patent attorney David Duckworth intentionally withheld two sets of material information from the United States Patent & Trademark Office (PTO) while the application for Patent '610 (Application '879) was pending.

The first set of material information was an October 2001 3M Technical Bulletin entitled "Polyurethane Protective Tape: Preparation and Application Instructions." Defendants contend that the 3M Technical Bulletin is "material prior art," was disclosed to Mr. Duckworth in August

---

[2]ZAGG filed the suit seeking a declaration of non-infringement and invalidity of Patent '610, then held by Mr. Mason and his company eShields LLC. In that suit, ZAGG asserted inequitable conduct based on the very same set of circumstances at issue in this litigation. The Defendants in this case have asserted that ZAGG is judicially estopped from denying that ZAGG engaged in inequitable conduct. But this argument is not persuasive for two reasons. First, the inequitable conduct claims in that earlier case were pleaded before Therasense was decided. Second, the claims were never subject to a motion to dismiss, much less a judicial determination.

[3]The application for the '869 Patent was filed on April 1, 2006.

2010, before the '610 Patent was issued, and should have been disclosed to the PTO.

The second set of information was the existence and nature of the "BodyGuardz" product line sold by Mason's and ZAGG's competitor, NLU Products, beginning in November 2006. Defendants XO Skins LLC, Fusion of Ideas, and Ghost Armor LLC (collectively, XO Skins Defendants)[4] contend, in their opposition to ZAGG's motions to dismiss, that the statutory on-sale bar set forth in 35 U.S.C. § 102(b)[5] made the product line material to the review and approval of the '879 Application dated June 4, 2008. They do not, however, specifically allege that theory in their counterclaims.

## ANALYSIS

**The Duty of Candor**

"Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability as defined in this section." 37 C.F.R. § 1.56(a). An individual who breaches the duty of candor may have engaged in inequitable conduct. Ferring B.V. v. Barr Lab., Inc., 437 F.3d 1181, 1186 (Fed. Cir. 2006).

The duty to disclose exists "until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned." Id. The regulation defines "each individual associated with the filing or prosecution of a patent application" to mean the inventor, one who prepares or

---

[4]Defendant United SGP Corp. (SGP) bases its claim only on the 3M Technical Bulletin.

[5]"A person shall be entitled to a patent unless . . . the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." (emphasis added).

prosecutes the application, and "[e]very other person who is <u>substantively involved in the preparation or prosecution</u> of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application." 37 C.F.R. § 1.56(c)(3) (emphasis added). An individual is substantively involved in the patent application process where his participation "relates to the content of the application or decisions related thereto" and "the involvement is not wholly administrative or secretarial in nature." <u>Avid Identification Sys., Inc. v. Crystal Import Corp.</u>, 603 F.3d 967, 974 (Fed. Cir. 2010).

**Elements of Inequitable Conduct**

To establish inequitable conduct, the accused infringer must prove "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." <u>Exergen Corp. v. Wal-Mart Stores, Inc.</u>, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009). "In other words, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." <u>Therasense, Inc. v. Becton, Dickinson & Co</u>, 649 F.3d 1276, 1290 (Fed. Cir. 2011). The Federal Circuit issued <u>Therasense</u> to tighten "the standards for finding both intent and materiality in order to redirect [the inequitable disclosure] doctrine that has been overused to the detriment of the public." <u>Id.</u>

The Federal Circuit recognized that "direct evidence of deceptive intent is rare," so the court "may infer intent from indirect and circumstantial evidence." <u>Id.</u> at 1290. But the Federal Circuit warned that a court may not infer intent solely from materiality. <u>Id.</u> "Proving that the

applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." Id. And gross negligence is not sufficient to justify an inference of intent to deceive. Id. at 1291.

**Pleading Standard**

Inequitable conduct must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Exergen, 575 F.3d at 1326. To survive a motion to dismiss, the pleading must identify "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Id. at 1327. That is, the claimant must allege "facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive." Delano Farms Co., v. California Table Grape Comm'n, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (citing Exergen and Therasense).

**ZAGG's Motions to Dismiss**

ZAGG contends that the inequitable conduct counterclaims fail to state a claim upon which relief may be granted for three reasons. First, ZAGG asserts that the patentee's attorney, David Duckworth, was not substantively involved in the prosecution of the '610 Patent and so had no duty to disclose. Second, ZAGG contends that the pleadings fail to identify how the 3M Technical Bulletin can be considered "but-for" material under the Therasense standard.[6] And third, ZAGG asserts that the facts alleged do not give rise to a reasonable inference of intent to

---

[6]During the hearing on the motions to dismiss, ZAGG conceded that it does not have a basis to challenge Defendants' pleading of materiality for the BodyGuardz products. (See Feb. 14, 2012 Hr'g Tr. at 17.)

deceive the PTO.

    1.    <u>Duty to Disclose</u>

Defendants allege that David Duckworth, who became the patentee's counsel in approximately July 2010,[7] was substantively involved in the prosecution of Application '879, knew about the 3M Technical Bulletin (it was disclosed to him by ZAGG's counsel on August 2, 2010) and the BodyGuardz product line, and, consequently, had a duty to disclose that information to the PTO before the '610 Patent was issued on August 31, 2010. Defendants also allege, somewhat cryptically, that the patentee, Mr. Mason, had knowledge of the same information but failed in his duty to disclose that information.

The Defendants have clearly identified Mr. Duckworth as an individual they believe withheld information from the PTO. They have also identified Mr. Mason (the inventor listed on the '610 Patent) as a person substantively involved with prosecution of the patent (he is the "patentee" referred to in the counterclaims and is easily identified from the documents).

The Defendants have adequately alleged that Mr. Duckworth and Mr. Mason were "substantively involved" in the preparation or prosecution of the Application '879 and so had a duty to disclose material information to the PTO. The duty of candor is broadly worded in the regulations and the case law. It expressly applies to the inventor, Mr. Mason. And although the August 2, 2010 letter suggests that Mr. Duckworth's involvement began after the vast majority of the '879 Application was prosecuted (that is, he became counsel for Mr. Mason in early July

---

[7]<u>See</u> Letter from Robyn Phillips (Workman Nydegger) to David Duckworth (August 2, 2010) (stating that "[w]e are in receipt of your <u>correspondence dated July 2, 2010</u> informing me that you <u>now</u> represent Andrew Mason and eShields, L.L.C., in regards to its intellectual property.") (emphasis added) (attached as exhibit to XO Skins Defendants' Counterclaim).

2010, approximately two months before the '610 Patent was issued), the factual allegations adequately support the inference that he nevertheless was substantively involved.

From Mr. Duckworth's letters one can infer that his participation related to the content of the application or decisions concerning the application and that his involvement was not "wholly administrative or secretarial in nature." Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 974 (Fed. Cir. 2010).  First, in his letter he uses the term "we" (although this fact by itself is not particularly persuasive).  Second, he discusses materiality, payment of the "issue fee," and the standard governing withdrawal of an application.  Third, he states that he will submit the 3M Technical Bulletin to the PTO in a related patent application.

The Defendants' generic reference to "other persons," however, is insufficient to include any other individual in the analysis.  The Defendants may not justify their "on information and belief" allegation based on the excuse that the "facts concerning the extent of the work of these employees . . . are uniquely within those individuals' control."  Even though it may be reasonable to infer that a group of individuals was substantively involved in prosecution of a patent, allowing an inequitable conduct claim to proceed based on the alleged actions of "Jane Does" and "John Does" would disregard the standards set forth in Rule 9(b), Exergen, and Therasense.

    2.    Materiality

The Federal Circuit in Therasense held that "the materiality required to establish inequitable conduct is but-for materiality.  When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."  649 F.3d at 1291 (emphasis added).  The holding replaces the "reasonable examiner" standard.  Id. at 1294.

ZAGG contends that the Defendants' allegations of materiality concerning the 3M Technical Bulletin are deficient.[8] ZAGG takes the position that

> identification of claim limitations must be comprehensive in order to meet the but-for materiality standard. That is, the party charging inequitable conduct must not only identify the specific limitations to which the withheld references are allegedly relevant, but where all other limitations are shown in the prior art and how the withheld reference either anticipates or makes obvious the claims in combination with other references.

(Pl.'s Mem. Supp. Mot. Dismiss (Docket No. 93) at 7.) According to ZAGG, Defendants have failed to do this.

Defendants counter that Paragraph 22 in Count III of the counterclaim brought by the XO Skins Defendants (repeated in Paragraph 7 of SGP's fifth affirmative defense) coupled with a letter sent by Robyn Phillips on August 30, 2010, to Mr. Duckworth (attached as an exhibit to the XO Skins Defendants' Counterclaim) is sufficient to plead materiality. The court disagrees. Both Paragraph 22 and the letter make conclusory statements that fail to specifically "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found . . . ." Exergen, 575 F.3d at 1329. The Defendants have not sufficiently pleaded the materiality of the 3M Technical Bulletin.

3.  Intent

Although 9(b) states that conditions of the mind may be averred generally, the Federal Circuit requires that "the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." Id. at 1327. For the

---

[8]As noted above, ZAGG no longer challenges the materiality allegations concerning the BodyGuardz product line.

inequitable conduct alleged here, the relevant "conditions of the mind" are knowledge of the withheld information, knowledge of the information's materiality, and a specific intent to deceive the PTO. Id. at 1327, 1328-29.

ZAGG contends that the court must dismiss the inequitable conduct claims unless the inference of intent is "the single most reasonable inference" that may be drawn from the allegations. But such a standard applies only when the court is evaluating the claim on the merits under the clear and convincing standard. At the pleading stage, the requirement of an inference of deceptive intent is not so rigid. As the Federal Circuit noted in Exergen:

> A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith. In contrast to the pleading stage, to prevail on the merits, the accused infringer must prove both materiality and intent by clear and convincing evidence. Whereas an inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b), this inference must be the *single most reasonable* inference able to be drawn from the evidence to meet the clear and convincing standard.

575 F.3d at 1329 n.5 (emphasis in original; internal citations and quotation marks omitted).

As set forth below, the Defendants have adequately alleged that Mr. Duckworth and Mr. Mason had knowledge of the 3M Technical Bulletin and intent to withhold it from the PTO. But the Defendants have not adequately alleged knowledge or intent concerning the BodyGuardz product line.

        a.    *The 3M Technical Bulletin*

Defendants allege that Ms. Phillips, in her August 2, 2010 letter to Mr. Duckworth, told Mr. Duckworth "of the existence of this Technical Bulletin and of his and Mr. Mason's (as the patentee) duty and obligation to disclose this reference to the Examiner of the USPTO." (XO

9

Skins' Counterclaim (ECF No. 87) ¶ 23.)  The letter itself, attached as an exhibit to the counterclaim, does not mention Mr. Mason.  But at the pleading stage, the court does not find that omission significant.  There is a reasonable inference that Mr. Duckworth told Mr. Mason of the letter, particularly since in his response to Ms. Phillips, Mr. Duckworth several times refers to "we."  (See Letter from David G. Duckworth to Robyn L. Phillips (Aug. 12, 2010) (attached as Ex. to XO Skins Defendants' Counterclaim).)  And although Mr. Duckworth denies in his written response to Ms. Phillips that the 3M Bulletin is material, he nevertheless tells Ms. Phillips that the reference would be given to the PTO as part of a related continuation application.  From that, one could reasonably infer a specific intent to withhold it from the PTO while the PTO reviewed the pending Application '879.

        b.    *The BodyGuardz Product Line*

In their memorandum and at the hearing, Defendants argued that because the holder of the '610 Patent sued ZAGG and NLU, the manufacturer of the BodyGuardz products, for infringing the '610 Patent in federal court the day after the '610 Patent issued (the "California Suit"), the patentee clearly knew of the existence and significance of the BodyGuardz product line.  But Defendants did not refer to the California Suit in their counterclaims and made only conclusory allegations about ZAGG's intent to deceive.  The allegations are not sufficient to establish knowledge of the product line's materiality or an intent to withhold it from the PTO.

**ORDER**

    For the foregoing reasons, the court ORDERS as follows:

    1.    Plaintiff's Motion to Dismiss (ECF No. 51) is GRANTED WITHOUT PREJUDICE.

  2. Plaintiff's Motion to Dismiss (ECF No. 53) is GRANTED WITHOUT PREJUDICE.

  3. Plaintiff's Motion to Dismiss (ECF No. 92) is GRANTED WITHOUT PREJUDICE.

  4. Plaintiff's Motion to Dismiss (ECF No. 94) is GRANTED WITHOUT PREJUDICE.

  5. The Defendants may file, no later than 30 days from the date of this Order, a motion for leave to file amended inequitable conduct counterclaims (nothing else in the counterclaims or answers may be amended) with the proposed amended counterclaims attached. If nothing is filed by the deadline, the inequitable conduct counterclaims and any related affirmative defense will be dismissed WITH PREJUDICE.

  DATED this 15th day of March, 2012.

        BY THE COURT:

        *Tena Campbell*
        TENA CAMPBELL
        U.S. District Court Judge